471 So.2d 74 (1985)
Mario DELGADO-SANTOS, Appellant,
v.
The STATE of Florida, Appellee.
No. 83-2031.
District Court of Appeal of Florida, Third District.
June 11, 1985.
Rehearing Denied July 8, 1985.
*75 Bennett H. Brummer, Public Defender and John H. Lipinski and Arthur W. Carter, Sp. Asst. Public Defenders, for appellant.
Jim Smith, Atty. Gen. and Charles H. Fahlbusch, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HUBBART and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
This appeal is from convictions, after a jury trial, of first degree murder and armed robbery. The controlling question presented is whether a police interrogation is a "proceeding" under section 90.801(2)(a), Florida Statutes (1981), so as to permit the admission as substantive evidence of a trial witness's prior inconsistent statement made during such questioning. On the conclusion that it is not, we reverse the judgment below for a new trial.
The appellant Delgado-Santos and one Pizzaro-Ortiz were accused of the stabbing death of the co-owner of a service station in Homestead, Florida in the course of a holdup on July 29, 1981; the murder weapon was later found in a room they shared in a nearby rooming house. At about 6:00 p.m. on August 12, 1981, Ortiz, who was then sixteen years old, was taken into custody  although supposedly not "under arrest"  and was transported in handcuffs first to one and then to another police station for "questioning."[1] Sometime after midnight, while confined to a holding cell, Ortiz made the statement which is the focal point of this case. At the conclusion of a long process of "pre-statement interrogation" and after being duly given his Miranda rights, he stated under oath, through an interpreter, that he had participated in the holdup only at the instigation of Delgado-Santos who had both planned and suggested it and who had stabbed the victim because he reached for something after being told to keep still. The statement was transcribed and read to Ortiz who initialed each page and signed at the conclusion. Only after the statement was taken, Ortiz was formally arrested and transported to Youth Hall.[2]
Ortiz and Santos were separately indicted for first degree murder and armed robbery. During the pendency of these cases, Ortiz, without conditions with respect to giving testimony in the Santos case, was *76 permitted to plead guilty to armed robbery and a reduced charge of second degree murder and was given an unrestricted life sentence.[3]
Before the commencement of the Santos trial which followed and with which we are now concerned, Ortiz then indicated that he would not testify against Santos. For this reason, the state sought and was granted leave to call Ortiz as a court's witness subject to cross-examination by both sides.[4] Upon initial questioning by the state, Ortiz stated that he had committed the holdup and murder entirely on his own and that Santos was home sleeping at the time and had nothing to do with it. When he was impeached, without objection, with the police statement, Ortiz acknowledged that he had made it, but said he had done so only to avoid the electric chair and that, insofar as Santos was concerned, it "was a lie." The state then offered the statement itself as direct evidence of Santos's guilt. Overruling the defendant's specific objection that it could not be received for that purpose, the trial court admitted it into evidence. This was reversible error.
The question before us is governed by section 90.801(2)(a), Florida Statutes (1981). For the first time in Florida, that provision permits, under rigidly circumscribed conditions, the use of prior inconsistent statements like Ortiz's, which are clearly hearsay, as substantive evidence, rather than, as before, solely for impeachment purposes. Moore v. State, 452 So.2d 559 (Fla. 1984), approving, 424 So.2d 920 (Fla. 4th DCA 1983); Diamond v. State, 436 So.2d 364 (Fla. 3d DCA 1983); Webb v. State, 426 So.2d 1033 (Fla. 5th DCA 1983), pet. for review denied, 440 So.2d 354 (Fla. 1983). In language which is essentially identical to Federal Rule of Evidence 801(d)(1)(A), from which it was obviously taken, it states:
(2) A Statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
(A) Inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition... .
Since Ortiz testified at trial and his previous statement, which was violently inconsistent with his trial testimony, was under oath, compare, Mazzara v. State, 437 So.2d 716 (Fla. 1st DCA 1983), pet. for review denied, 444 So.2d 417 (Fla. 1984); Starchk v. Wittenberg, 411 So.2d 1000 (Fla. 5th DCA 1982), the determinative issue is whether it was given at an "other proceeding" and thus justified its substantive admissibility below.
In answering this question in the negative, we draw on several sources of interpretation:
(1) First, the congressional history of the expression "other proceeding" demonstrates that its insertion by the conference committee represented a compromise between the version drafted by the advisory committee and approved by the Senate, which permitted the substantive use of any prior inconsistent statement, S.Rep. No. 1277, 93rd Cong., 2d Sess. (1974), and that adopted by the House, which required that the statement have been given at a trial, hearing or deposition under oath and subject to cross-examination. H.R.Rep. No. *77 650, 93rd Cong., 2d Sess. (1974). It is clear that the "other proceeding" language, taken with the dropping of the cross-examination requirement, "covers statements before a grand jury." H.R.Rep. No. 1597, 93rd Cong., 2d Sess. (1974) (Conference Committee Report) reprinted in U.S.C.A. The Federal Rules of Evidence and in 4 U.S.Code Cong. & Adm.News 7104 (1974), quoted in United States v. Castro-Ayon, 537 F.2d 1055, 1057 n. 3 (9th Cir.1976), cert. denied, 429 U.S. 983, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976). It is just as plain, however, in the light of the far more restrictive House language which was only slightly expanded, that the term should not be applied to any situation which is not at least close to that analogue.[5] As two commentators have stated,
the term "other proceeding" ... was intended to inject into the Rule the stricter limitations of the House version ... lest the meaning of the compromise be read out of the Rule.
Case Comment, Federal Rule of Evidence 801(d)(1)(A)  Prior Inconsistent Statements  Scope of the Term "Other Proceeding"  United States v. Castro-Ayon, 537 F.2d 1055 (9th Cir.1976), 10 Loy.L.A.L.Rev. 497, 503 (1977);
the only appropriate construction of the term "other proceeding" is a narrow one... . [T]o give [it] a liberal construction is to undermine the foundation of reliability that Congress sought to establish for this Rule.
Note, United States v. Castro-Ayon: An Interpretation of Federal Rule of Evidence 801(d)(1)(A), 10 SW.U.L.Rev. 985, 987 (1978).
(2) Applying the widely used, but nonetheless valuable tool of statutory construction which has been Latinized as ejusdem generis, the general word "proceeding" must be construed so as to limit its meaning to one similar to that of the specific terms, "trial" and "hearing," which it follows. 49 Fla.Jur.2d Statutes § 128 (1984); Black's Law Dictionary 608 (rev. 4th ed. 1968). Indeed, the order of the words in section 90.801(2)(a), Florida Statutes (1981) indicates a descending sequence from the most formal setting to the least formal. Thus, an "other proceeding" must be no less formal than a deposition and no more so than a hearing. See Case Comment, Other Proceeding, 10 Loy.L.A.L.Rev. at 503.
(3) Even taken alone, the word "proceeding" itself implies  employing various permutations of the expression  a degree of formality, convention, structure, regularity and replicability of the process in question. Dunn v. United States, 442 U.S. 100, 107, 99 S.Ct. 2190, 2195, 60 L.Ed.2d 743, 751 (1979) ("[T]he Government contends that any statements made under oath for submission to a court, whether given at an attorney's office or in a local bar and grill, fall within the ambit of § 1623... . In our judgment, the term `proceeding,' which carries a somewhat more formal connotation, *78 suggests that Congress had a narrower end in view when enacting § 1623."); United States v. Tibbs, 600 F.2d 19, 21 (6th Cir.1979) ("[C]ommon experience indicates that every proceeding, including an ancillary proceeding, must incorporate certain notions of formality and convention."); see 1 Am.Jur.2d Actions § 3 (1962); 1 C.J.S. Actions § 1h (1936); cases collected, 34 Words and Phrases "Proceeding" (1957).
Using these tools, it seems obvious to us on the face of it that no process of police questioning  much less one of the kind involved here  can qualify as a 90.801(2)(a) "proceeding." Investigative interrogation is neither regulated nor regularized; it contains none of the safeguards involved in an appearance before a grand jury and does not otherwise even remotely resemble that process; and it has no quality of formality and convention which could arguably raise the interrogation to a dignity akin to that of a hearing or trial.
In accordance with this view, the overwhelming weight of authority on the issue is that no variation of police investigatory activity constitutes an 801(d)(1)(A)-90.801(2)(a) proceeding. Martin v. United States, 528 F.2d 1157 (4th Cir.1975) (substantive admissibility of sworn inconsistent statement to federal agents by witness-coconspirator error since interrogation was not "proceeding"); United States v. Livingston, 661 F.2d 239 (D.C. Cir.1981) (prior inconsistent statement to postal inspector not made in "proceeding," distinguishing Castro-Ayon on ground that "the circumstances fall far short of those in a grand jury proceeding, the paradigmatic `other proceeding' under the rule." 661 F.2d at 243.); United States v. Ragghianti, 560 F.2d 1376 (9th Cir.1977) (inconsistent statement to investigating FBI agent inadmissible; "[t]here is, after all, a difference between a prior statement obtained from a witness by the police in the course of a criminal investigation, and testimony given under oath in a formal proceeding." 560 F.2d at 1381.); see Robinson v. State, 455 So.2d 481 (Fla. 5th DCA 1984); but cf. State v. Smith, 97 Wash.2d 856, 651 P.2d 207 (1982).
The only Florida case directly on point[6] is Robinson v. State, 455 So.2d 481 (Fla. 5th DCA 1984). There the court held substantively inadmissible a prior inconsistent police statement given by an alleged coperpetrator under circumstances quite similar to these. It based its decision, however, upon the reasoning that "[w]hile under some circumstances, as in State v. Smith, a police interrogation may qualify as an `other proceeding,'" the one in question was not, "[g]iven the setting under which the statement was made and its questionable reliability." 455 So.2d at 484. Plainly, the particular interrogation in this case  with its admixture of Ortiz's youth and the improprieties involved in confining him without arrest and without transporting him to a youth facility  was even more irregular and "unreliable" than the one in Robinson. Thus, as we are aware, we could reach the same ultimate conclusion of inadmissibility merely by adopting and applying the Robinson rationale. Nevertheless, because we disagree with its case-by-case *79 approach to the problem, we decline to do so.
Robinson, and, even more, Smith, which the fifth district followed and which is the only decision which actually permits the admission of a police statement under 801(d)(1)(A), purport to make the question turn on the "reliability" of the contents of the particular statement and of the conditions under which it was given. In our view, the basic flaw in this conclusion is that it finds no basis in the statute. While the legislature and Congress may have been ultimately concerned with the "reliability" of a particular statement, they sought to vindicate that concern only by establishing given and objective criteria as to the circumstances, including the kind of forum, under which it was given. And it is for the legislature, not the courts, to determine not only the policy to be promoted, but the means by which that end is to be achieved. 10 Fla.Jur.2d Constitutional Law § 147 (1979). By suggesting, without statutory authority, that the determination that the existence of a proceeding can depend upon what is said before it, the Robinson-Smith test of reliability[7] violates this basic principle.
In sum, we think that a "bright line" test is mandated by the statute: in this context, this means that a police interrogation either is or is not an "other proceeding." Since, for the reasons outlined, we conclude that it is not, the Ortiz statement was incorrectly admitted as substantive evidence, and the judgment below is therefore reversed for a new trial.[8]
Reversed and remanded.
NOTES
[1] The trial court was obviously concerned with the propriety of this process.

Q. Now, why was Mr. Pizarro-Ortiz handcuffed in your car and not handcuffed any other place?
A. I would not put him in the back of my car without handcuffing him.
Q. For what reason?
A. Safety factor.
THE COURT: Whose safety factor are you concerned with?
THE WITNESS: The defendant as well as myself and my partner's.
THE COURT: Tell me under what theory of law are you permitted to handcuff a person, place that person in the automobile, shut the door and take that person to a jail or police station and still not charge that person with a violation of a crime?
Under what theory of law, please.
THE WITNESS: It was under his own voluntariness.
THE COURT: You mean he asked you to put handcuffs on him?
THE WITNESS: No, sir.
THE COURT: My question is what permitted you to handcuff a person who wasn't being charged with a violation of law?
THE WITNESS: I told him he was going to be handcuffed in order to ride down. He did not say 
THE COURT: Officer, answer my question. Under what theory of law are you permitted to handcuff a person without placing them under arrest?
THE WITNESS: None, your Honor.
THE COURT: You just go ahead and take a sixteen-year-old kid and tell him I'm going to handcuff you and expect him to object to it?
THE WITNESS: No, sir.
Since Ortiz, as shall be seen, pled guilty, the propriety of the admission of his confession against him under Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) and Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) was not before the trial court and is not before this one.
[2] But see sec. 39.032, Fla. Stat. (1981).
[3] We have not been told why the state attorney did not delay reducing the charge from first degree murder  with its mandatory twenty-five years without parole  until after Ortiz testified "truthfully" in the Santos case. See Alvarez v. State, 467 So.2d 455 (Fla. 3d DCA 1985). The use of this common, effective, and surely not impermissible prosecutorial technique might well have obviated the severe legal problems and the possible consequent injustice with which we are now faced.
[4] The appellant does not challenge the propriety of this ruling.
[5] Thus, in the leading case of United States v. Castro-Ayon, which held that an immigration investigation was an "other proceeding," the court pointed out the similarities with the grand jury process:

[B]oth are investigatory, ex parte, inquisitive, sworn, basically prosecutorial, held before an officer other than the arresting officer, recorded, and held in circumstances of some legal formality.
537 F.2d at 1058. The court went on to say, however,
[w]e do not hold, as the question is not before us, that every sworn statement given during a police-station interrogation would be admissible. While this immigration proceeding bears many similarities to the station-house interrogation, we believe that it qualifies as an "other proceeding" within the meaning of the statute.
537 F.2d at 1058. We similarly note that it is not necessary to indicate whether we agree with the conclusion in Castro-Ayon. But see Case Comment, Federal Rule of Evidence 801(d)(1)(A)  Prior Inconsistent Statements  Scope of the Term "Other Proceeding"  United States v. Castro-Ayon, 537 F.2d 1055 (9th Cir.1976), 10 Loy.L.A.L.Rev. 497 (1977); Note, United States v. Castro-Ayon: An Interpretation of Federal Rule of Evidence 801(d)(1)(A), 10 S.W.U.L.Rev. 985 (1978).
[6] On a related question, Arner v. State, 459 So.2d 1136 (Fla. 4th DCA 1984) holds that a prior sworn statement given to defense counsel was inadmissible under 90.801(2)(a) because it had not been taken in a prior "judicial [sic] proceeding." On the other hand, in Diamond v. State, this court approved (without discussing or deciding the present issue because the state, against which the statement was to be admitted, did not contest the point) the substantive use of a witness statement made to the state attorney. See Slavens v. State, 1 Ark. App. 245, 614 S.W.2d 529 (1981) (sworn statement to prosecuting attorney acting as equivalent to grand jury under Arkansas law is "proceeding"); see also, State v. Witte, 451 So.2d 950 (Fla. 3d DCA 1984), pet. for review denied, 458 So.2d 274 (Fla. 1984) (same process is "official proceeding" under Florida perjury law); cf., Shramm v. State, 374 So.2d 1043 (Fla. 3d DCA 1979) (police questioning not "official proceeding" under Florida perjury law).
[7] It should be noted, in contrast, that other provisions of the code explicitly render the court's assessment of the value of the particular item of evidence a condition of admissibility. See sec. 90.804(2)(c), Fla. Stat. (1981) ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement."); Maugeri v. State, 460 So.2d 975 (Fla. 3d DCA 1984).

In the absence of such a provision in 90.801(2)(a), the Robinson-Smith rationale, rendering a "reliable" statement admissible although there would otherwise be no "proceeding," would amount to the enactment of a catch-all or umbrella exception for the admission of trustworthy hearsay which does not fall within any of the specific exceptions. This principle is contained in the federal rules, 804(b)(5), but was pointedly not adopted in Florida.
[8] Because, as the appellant's counsel conceded at oral argument, there is other evidence of guilt, so that a directed verdict is not required by our ruling concerning Ortiz's statement, we are not confronted with the problem presented in Moore v. State, 473 So.2d 686 (Fla. 4th DCA 1984) of whether a substantively considered prior inconsistent statement alone is sufficient to support a conviction.